**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF
PENNSYLVANIA, GOVERNOR TOM
WOLF, ATTORNEY GENERAL JOSH
SHAPIRO, and PENNSYLVANIA STATE
POLICE,

                    Plaintiffs,

    v.

DEFENSE DISTRIBUTED, DEFCAD,
GHOST GUNNER and CODY WILSON,

                  Defendants.

**CIVIL ACTION NO: 2:18-cv-03208-PD**

**MOTION FOR PRELIMINARY INJUNCTION**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

The Commonwealth of Pennsylvania (the "Commonwealth"), Governor Tom Wolf,

Attorney General Josh Shapiro and the Pennsylvania State Police (the "State Police") (together,

the "Plaintiffs"), by and through the Attorney General, hereby file this Motion Preliminary

Injunction (the "Motion") against Defendants Defense Distributed, DEFCAD, Ghost Gunner, and

Cody Wilson (together, the "Defendants") and respectfully request that this Court grant their

Motion and issue a Preliminary Injunction consistent with the proposed form of order attached

hereto, enjoining the Defendants from making any 3D printable firearms available over the internet

in Pennsylvania or assisting anyone else in doing so.

In support of its Motion, the Plaintiffs rely on the facts and law set forth in their

supporting Memorandum of Law and Verified Complaint in this action.

Respectfully submitted,

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

July 30, 2018

*/s Jonathan Scott Goldman*
JONATHAN SCOTT GOLDMAN
J. BART DELONE
LAUREN E. SULCOVE
PA Atty. Nos. 93909, 42540, and 92969
Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391
jgoldman@attorneygeneral.gov

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF
PENNSYLVANIA, GOVERNOR TOM
WOLF, ATTORNEY GENERAL JOSH
SHAPIRO, and PENNSYLVANIA STATE
POLICE,

                         Plaintiffs,

    v.

DEFENSE DISTRIBUTED, DEFCAD,
GHOST GUNNER and CODY WILSON,

                     Defendants.

**CIVIL ACTION NO: 2:18-cv-03208-PD**

**MOTION FOR PRELIMINARY**
**INJUNCTION**

## PROPOSED ORDER

AND NOW, on this \_\_\_\_ day of _____, 2018, upon the Motion for Preliminary

Injunction (the Motion") filed by Plaintiffs the Commonwealth of Pennsylvania, Governor Tom

Wolf, Attorney General Josh Shapiro and the Pennsylvania State Police (together, the "Plaintiffs")

against Defendants Defense Distributed, DEFCAD, Ghost Gunner, and Cody Wilson (together,

the "Defendants"), Plaintiffs' supporting Memorandum of Law, the Verified Complaint, and

supporting materials,

**WHEREFORE,** Plaintiffs have requested that this Court enter judgment in its favor and:

    a.  issue an order enjoining the Defendants from making any 3D printable

        firearms available over the internet in Pennsylvania or assisting anyone else in

        doing so until such time as a formal injunction hearing may be held;

    b.  preliminarily and permanently enjoin the Defendants from making any 3D

printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so;

c.  Award Plaintiffs reasonable costs, including attorneys' fees; and

d.  Grant all such additional and further relief as this Court deems appropriate, just and proper.

**WHEREFORE, IT IS HEREBY ORDERED THAT** the Plaintiffs' Motion for Preliminary Injunction is **GRANTED**, and the Defendants are hereby bound by the following terms:

a.  Defendants are preliminarily and permanently enjoined from making any 3D printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so;

b.  Plaintiffs are to be awarded reasonable costs, including attorneys' fees; and

c.  Plaintiffs are granted such additional and further relief as this Court deems appropriate, just and proper.

SO ORDERED.

ENTERED this _____ day of _____, 2018.

_____
U.S.D.J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, GOVERNOR TOM WOLF, ATTORNEY GENERAL JOSH SHAPIRO, and PENNSYLVANIA STATE POLICE, <br><br> Plaintiffs, <br> v. <br><br> DEFENSE DISTRIBUTED, DEFCAD, GHOST GUNNER and CODY WILSON, <br><br> Defendants. | CIVIL ACTION NO: 2:18-cv-03208-PD |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The Commonwealth of Pennsylvania (the "Commonwealth"), Governor Tom Wolf, Attorney General Josh Shapiro and the Pennsylvania State Police (the "State Police") (together, the "Plaintiffs"), by and through the Attorney General, hereby file this Memorandum of Law in support of their Motion for Preliminary Injunction against Defendants Defense Distributed, DEFCAD, Ghost Gunner, and Cody Wilson (together, the "Defendants") to enjoin the Defendants from making any 3D printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so:

## I.    INTRODUCTION

In this action, the Plaintiffs seek to uphold and maintain the rule of law in the Commonwealth of Pennsylvania – nothing more and nothing less. Imminently, by actions taken and threatened, the Defendants promise to upend both Pennsylvania and federal law and aid and abet others in doing so. The Defendants' actions, for example, violate the rule of law with respect

to the National Firearms Act, 18 U.S.C. § 922 *et seq*; Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq*.; public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law, 18 Pa. C.S. §6504; corruption of minors, 18 Pa. C.S. § 6301; Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, and the express prohibition set forth in Chapter 10-2000 of the Philadelphia Code on using a 3D printer to create any firearm – or even any piece of a firearm – unless that person has a license to manufacture firearms under 18 U.S.C. §923(a), PHILA., PA CODE §10-2002 (2013).   They violate and encourage others to violate the Federal Gun Control Act of 1968, including but not limited to § 922 (p) under which it is unlawful for any person to manufacture, sell, ship, deliver, possess, transfer, or receive any firearm that cannot be detected by a walk-through metal detector or identified as a firearm by the types of x-ray machines used at airports.   See 18 U.S.C. § 922 (p). With respect to each, the Defendants are aiding and abetting others to commit unlawful acts, 18 Pa. C.S. § 306.

For a nominal fee, *anyone* can become a "member" of Defense Distributed.   When you enroll, you are not asked for proof of age or valid gun license or permit; you need only pick a username and password, and supply an email.   Defense Distributed promises that, by joining, members "do more than 'protect' the Second Amendment. They fund its **direct, material expansion**."[1]   What they mean is this: imminently members and others will be able to download an *actual*, *working gun*, printed immediately to their 3D printers in un-metal-detectable plastic. Or, as they have promised: On August 1, 2018, "[t]he age of the **downloadable gun** formally begins."[2]

---

[1] Emphasis added.

[2] Emphasis added.

The Defendants will presumably claim that they are merely distributing "computer code," as if they are an internet library or bookseller. They are not. They are selling actual working guns, plastic and undetectable, distributing them to whomever downloads and 3D-prints them. Rather than an in-person sale or delivery by post with a box to open, the Defendants deliver your gun to you directly through your internet connection. It can be "printed" on your 3D printer and immediately available for use. No I.D.; no background check; no waiting period.

Far from a book containing ideas or computer code to be read and considered, the Defendants' business is more like downloading music today through the internet: Though the songs may be made of bits and bytes, what the purchaser receives is actual music – the same music that in earlier days might have been purchased from the record store and played as a 33 or 45-inch record, 8-track, cassette tape or compact disc. And the downloaded music can be played by simply opening the file and pressing *play*.

Similarly, with the Defendants "downloadable guns," here, all the purchaser need do is *print*, *load* and *fire*. But guns are not like books or music that can be sold under the First Amendment subject to only limited restriction. They are Second Amendment-protected, potentially-deadly weapons for which our society – and our Commonwealth – has created complex legal controls to help keep us safe. Among these controls are our criminal laws, including the Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq*. These long-settled legal statutes require protections such as minimum ages for purchase, background checks, and valid firearms licenses and permits. Violating these criminal statutes, or aiding and abetting others in doing so, constitute felonies and misdemeanors of various degrees under the law. Defendants do both here.

The Defendants – by intention and design – bypass these established legal requirements to instantaneously deliver real, workable firearms to any Pennsylvanian with access to an internet

3

connection and 3D printer.  The damage is imminent and irreversible: with the settlement of a federal action in Texas on Friday, July 27, the Defendants are free to – and promise to – distribute guns in Pennsylvania, and beyond, in negligent, reckless and knowing disregard of the criminal laws that apply to gun sales and purchases in the Commonwealth of Pennsylvania. Once these guns are on the streets and in the classrooms of our Commonwealth, they can never be retrieved. And, while the damage these guns will cause might be measured in general lawlessness and specific loss of life and limb, it cannot be compensated for by money damages.

For these reasons, and in accordance with the Motion for Preliminary injunction filed herewith, the Plaintiffs respectfully ask this Court to issue an immediate order enjoining the Defendants from making any 3D printable firearms available over the internet in Pennsylvania and assisting anyone else in doing so.

## II.   STATEMENT OF RELEVANT FACTS

### A.   THE DEFENDANTS' CONDUCT PRESENTS AN IMMINENT AND IRREVERSIBLE THREAT TO THE HEALTH, SAFETY AND RULE OF LAW OF PENNSYLVANIA AND PENNSYLVANIANS.

The Defendants have acknowledged that they are imminently making available to the public on their mainstream website "downloadable guns" that can be printed directly to a 3D printer. (Complaint, attached as Ex. "A" and incorporated herein by reference ("Compl.") at ¶ 28.) Indeed, Defense Distributed promises that, by joining, members "do more than 'protect' the Second Amendment. They fund its direct, material expansion."  (Compl. at ¶ 17.) With the Friday, July 27 settlement of a federal action in Texas, nothing prevents Defendants from allowing its members to download an *actual*, *working gun*, printed immediately to their 3D printers in un-metal-detectable plastic.  *Id.* As Defendants, have promised, "[t]he age of the downloadable gun formally begins." *Id.*

4

The Defendants' actions violate the rule of law with respect to the National Firearms Act, which prohibits manufacturers of firearms from shipping or transporting in interstate or foreign commerce any firearm to any person other than a licensed importer, licensed manufacturer, licensed dealer or licensed collector. 18 U.S.C. § 922(a)(2) (Compl. at ¶¶ 24-36) . The National Firearms Act also makes it unlawful for any person to transfer, sell, give, trade, transport or deliver any firearm to any person who the transferor knows, or has reasonable cause to believe, does not reside in the state in which the transferor resides. 18 U.S.C. § 922(a)(5). It is also unlawful for a licensed manufacturer to sell or deliver any firearm or ammunition to any individual with a license he knows, or has reasonable cause to believe, is less than 18 years of age or if the firearm or ammunition is other than shotgun or rifle, to any individual who the license he knows, or has reasonable cause to believe, is less than 21 years of age. 18 U.S.C. § 922(b)(1).  As stated, Defendants provides for no checks into background or legality of possession of any recipients of the firearms proposed to be distributed by their website as they are required to do by the National Firearms Act. Violations of statutes constitute negligence *per se* for the type of harm intended to be prevented by the statute. Here, the National Firearms Act was violated by the Defendants by circumventing the background check requirements and by passing the requirements for transfers of firearms only to licensed firearms dealers. The Protection of Lawful Commerce and Arms Act (PLCAA) specifically permits an action brought against a seller for negligent entrustment or negligence *per se*. 15 U.S.C. § 7901 *et seq.* The PLCAA also permits an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product. Such distribution would constitute negligence *per se* for failure to follow the applicable portions of the National Firearms Act, 18 U.S.C. § 922. The interpretation of the National Firearms Act for purposes of negligence *per se* constitute a

5

federal question for purposes of jurisdiction. Failure to perform background checks of any sort, or to ascertain the age of persons downloading firearms from the Defendant's website, constitutes negligence *per se* and that the Defendants have utterly failed to ascertain the legality of the possession of the firearms by users of their website. Many schools have 3-D printing facilities that are accessible by children which may be used to create firearms using the Defendant's manufacturing download. Possession by children of firearms is a harm contemplated by the National Firearms Act, which is apparent from the age limitation specified therein. Defendant's failure to ascertain the age of users of its provided materials in a clearly stated scheme to circumvent the National Firearms Act with knowledge that this is a possibility and an indifference as to the consequences, is negligence.

The Defendants' actions violate the rule of law with respect to the Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq.* (Compl. at ¶¶ 51-60); public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law public nuisances, 18 Pa. C.S. §6504 (*Id.* at ¶¶ 65); aiding and abetting (*Id. Throughout*), 18 Pa. C.S. § 306; corruption of minors (*Id.* at ¶ 65) 18 Pa. C.S. § 6301; Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* (*Id.* at ¶¶ 41-52); and the express prohibition set forth in Chapter 10-2000 of the Philadelphia Code on using a 3D printer to create any firearm – or even any piece of a firearm – unless that person has a license to manufacture firearms under 18 U.S.C. §923(a), PHILA., PA CODE §10-2002 (2013).  (*Id.* at ¶ 91.)

Defendant Cody Wilson is a self-described "crypto-anarchist" and "insurrectionist". (Compl. at ¶ 23.) Mr. Wilson has explained that he "represent[s] the destruction of commonsense gun control," and people "should be very afraid."  *Id.* When asked by a reporter in 2017 whether he agreed with *Wired* Magazine naming him "the 15th most dangerous person alive" in its

December 12, 2012 issue, he responded: "The words were not true then. But I would like them to be true one day." *Id.* That was 2012, when Mr. Wilson was a "24-year-old University of Texas law student … working on a 3D printable gun, the digital files of which he then planned to distribute to anyone who wanted them." *Id.*

According to Mr. Wilson, he initially released his "downloadable gun" on the internet, through Defendant Defense Distributed, on May 6, 2013; within two days the United States State Department demanded that Defense Distributed take the product offline, and Mr. Wilson sued the State Department. *Id.* That litigation just settled. Now Mr. Wilson has asserted that he will make his downloadable gun available to the masses by broadly releasing technical information that is not yet available on the internet and will enable the 3D printing of firearms. *Id.*

Defense Distributed does business in Pennsylvania and with Pennsylvanians through websites including https://defdist.org/, https://defcad.com/, and https://ghostgunner.net/. (Compl. at ¶ 19.) For a nominal fee ($5 per month – or even less for longer membership terms), *anyone* can become a member of Defense Distributed. (Compl. at ¶ 23.) When you enroll, Defense Distributed does not ask, for example, for proof of age or valid gun license or permit – one need only pick a username and password and supply an email address. *Id.* The member's name and mailing address are requested, but not required, and presumably such information is not verified in any way. *Id.*

On information and belief, Mr. Wilson owns and/or has complete control over Defendants Defense Distributed, DEFCAD and Ghost Gunner. (Compl. at ¶ 23.) Defendant DEFCAD is "administered by [Defendant] Defense Distributed," and DEFCAD allows users to upload and share computer assisted designs, blueprints and drawings for firearms "without restriction." (*Id.* at ¶¶ 11, 14.) Defendant Defense Distributed also administers the online "library" for Defendant

7

DEFCAD and manages Defendant Ghost Gunner.  *Id.*  On its website, DEFCAD asks "supporters" to "support DEFCAD" by "becom[ing] members of [Defendant] *Defense Distributed*" (emphasis added) by making "[a]nonymous bitcoin donations" at an identified account number; it promises to keep users' personal information private and allows users to submit firearms computer designs without registering an account, so long they are "only" sent "via encrypted communications." (*Id.* at ¶ 14.)

The Defendants have confirmed through public announcements, media statements, and a federal litigation in Texas that they have or plan to imminently release technical information that is not yet available on the Internet and will enable the simple downloading and manufacturing and creation of firearms through 3D printing. (*Id.* at ¶ 53.)  A July 10, 2018 news article reports that the relaunched Defense Distributed website will include "a repository" of downloadable guns that the Defendants have been privately creating and collecting, including "exotic DIY [do-it-yourself] semiautomatic weapons." (*Id.* at ¶ 54.)  Mr. Wilson states that Defense Distributed has been creating a vast library of new files for downloadable guns: "We're doing the encyclopedic work of collecting this data and putting it into the commons[.] [ ] What's about to happen is a Cambrian explosion of the digital content related to firearms." *Id.* One report relates that "[t]hroughout the litigation" in Texas, which lasted years, Mr. Wilson "developed a trove of other 3-D printable weapon blueprints, including Assembly AR-15s and AR-10s." *Id.*  These yet-to-be-released downloadable, 3D-printable guns are markedly advanced from those briefly released in 2013 because, although those older files may still be available on the dark web, those files may be piecemeal and not always reliable. *Id.*

What the Defendants are doing here is different: They are posting on a mainstream website full, 3D-printable files for complete guns. *Id.*  Indeed, in their second amended complaint in the

Texas litigation, the Defendants admit that new files have been created that have yet to become publicly available: "Defense Distributed has and will continue to create and possess other files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet." *Id.* The Defendants' stated intention and promise is that these files can be printed directly to a 3D printer. As Mr. Wilson has stated: "Give all the background checks that you want. My company is built around evading that entire program." (*Id.* at ¶ 21.) Or, as they say on their website: imminently ""[t]he age of the downloadable gun formally begins." (*Id.* at ¶ 54.)

## III. ARGUMENT

The Plaintiffs seek only to uphold and maintain the rule of law in the Commonwealth of Pennsylvania. The Defendants' actions taken and threatened – announced with a fuse that promises to detonate in 3 days ("August 1, 2018 … [t]he age of the downloadable gun formally begins") but which could blow at any time since the Texas litigation settled on Friday (2 days ago) – imminently upend well established Pennsylvania law and aid and abet others in doing so. Their actions, for example, violate the rule of law with respect to the National Firearms Act, 18 U.S.C. § 922 *et seq*; the Federal Gun Control Act., 18. U.S.C. § 921 *et seq*; Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq*.; public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law public nuisances, 18 Pa. C.S. §6504; aiding and abetting, 18 Pa. C.S. § 306, corruption of minors, 18 Pa. C.S. § 6301; Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.; and the express prohibition set forth in Chapter 10-2000 of the Philadelphia Code on using a 3D printer to create any firearm – or even any piece of a firearm – unless that person has a license to manufacture firearms under 18

U.S.C. §923(a), PHILA., PA CODE §10-2002 (2013). They also violate and encourage others to violate the Federal Gun Control Act of 1968, including but not limited to § 922 (p) under which it is unlawful for any person to manufacture, sell, ship, deliver, possess, transfer, or receive any firearm that cannot be detected by a walk-through metal detector or identified as a firearm by the types of x-ray machines used at airports. See 18 U.S.C. § 922 (p). At this time, all the Plaintiff ask is that this Court maintain the *status quo* by granting a temporary restraining order until such time as a hearing may be held on its injunction.

### A.  Legal Standard

Plaintiffs clearly satisfy the standard for obtaining a preliminary injunction. "In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) (internal quotations and citations omitted); *See Exl Labs., LLC v. Egolf*, No. 10-6282, 2010 U.S. Dist. LEXIS 131105, at *8 (E.D. Pa. Dec. 7, 2010). . The Plaintiffs satisfy all of these elements and the Defendants should be immediately enjoined from making any 3D printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so.

Should the Court deny the Plaintiffs' request, the Defendants will unleash a flood of easily accessible, 3D printable guns without serial numbers that will be immediately usable in Pennsylvania (and beyond) by anyone who cares to download them – regardless of age, criminal and background record, and whether or not they have a license or permit to carry. Once these guns are on the streets and in the classrooms of our Commonwealth, they can never be retrieved. And,

10

while the damage they will cause might be measured in general lawlessness and specific loss of life and limb, it cannot be compensated for by money damages.

**B.     The Plaintiffs are Likely to Succeed on the Merits of Their Claims.**

The public actions and statements of the Defendants speak for themselves.  And while their technology may be murky to the uninitiated, what they are enabling is clear.  So is the law.

The Defendants' imminent, promised actions plainly meet the elements of the laws identified in the Plaintiff's Complaint. They violate the Pennsylvania Uniform Firearms Act, create a public nuisance, corrupt minors, break Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and fly in the face of the City of Philadelphia's express prohibition on using a 3D printer to create any firearm or any piece of one without a license to manufacture firearms.  They also violate the Federal Gun Control Act of 1968, which is designed to provide support to Federal, State, and Local Law Enforcement officials in their fight against crime and violence.  *See* 18 U.S.C. § 921 *et seq.* Congressional Findings and Declaration.  Of particular importance is section 922 (p) of that Act, under which it is unlawful for any person to manufacture, sell, ship, deliver, possess, transfer, or receive any firearm that cannot be detected by a walk-through metal detector or identified as a firearm by the types of x-ray machines used at airports.  *See* 18 U.S.C. § 922 (p).

In each of these cases, the Defendants are not only committing the underlying offenses and liable for them but, importantly, they are aiding and abetting Pennsylvania citizens and others, in violation of 18 Pa. C.S. § 306.  Pennsylvanians (and others) who download the Defendants' "downloadable guns" will be enticed by the Defendants' actions to engage in the same unlawful conduct, some knowingly and others unknowingly.  The Defendants are not only creating lawlessness in Pennsylvania, but they are spreading it in a way that will grow exponentially with no way of getting the genie back into the bottle.

11

For these reasons, the Plaintiffs' are likely to succeed on the merits of each of their claims.

## C. The Plaintiffs and All Pennsylvanians Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted.

The facts of this case are a model example of irreparable harm. Generally, "'to show irreparable harm a plaintiff must demonstrate a potential harm which cannot be redressed by a legal or equitable remedy following a trial.'" *Strom*, 621 F. Supp. 2d at 229 (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994)). In other words, the injury "'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). Here, once the Defendants' downloadable, 3D-printable guns are posted on their mainstream website, there is no way to get them back. Once posted online, the guns can be downloaded and shared through email and the internet. An infinite number of guns can be printed from each download and, once the guns are printed – they are real, tangible, usable firearms, without serial numbers, that are on Pennsylvania streets and in Pennsylvania schools forever. There is no way to get them back. While the damage these guns will cause might be measured in general lawlessness and specific loss of life and limb, it cannot be compensated for by money damages. No amount of money will make the Plaintiffs, and the citizens of the Commonwealth, whole.

## D. The Balance of Equities Plainly Favors the Plaintiffs.

The balance of equities plainly favors the Plaintiffs. Injunctive relief will ensure that the *status quo* is maintained. When determining whether to issue a preliminary injunction, the court "must ensure that the issuance of an injunction would not harm the infringer more than the infringed-upon party." *Pappan Enter., Inc. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998)). The court "must balance the competing claims of injury and must consider the effect on

each party of the granting or withholding of the requested relief." *Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 510 (D.N.J. 2014). Here, if the Defendants are enjoined and ultimately prevail, they can post their guns for download at that time; they have waited throughout the pendency of the Texas litigation, and they can wait a little longer for the Court to adjudicate these fundamentally different and vitally important claims. There is no urgency. By contrast, as set forth above, once the Defendants post their guns for download and printing, there is no getting them back.

### E.    An Injunction Will Serve the Public Interest.

Here the public interest could not be more clear. The Commonwealth, itself, is a party, as is the Pennsylvania State Police, a statewide law-enforcement body dedicated to serving the Commonwealth and her citizens, with jurisdiction in all political subdivisions of the Commonwealth and "the responsibility to administer the provisions of" the Firearms Act. 18 Pa. C.S. § 6111.1.(a). The individual Plaintiffs are elected officials, responsible for the public interest. The Governor is the top elected official in Pennsylvania, and the Attorney General is the "chief law officer in the Commonwealth." Constitution, Art. IV, § 4.1. They bring these claims both in their official capacities and on behalf of the residents of Pennsylvania.

As set forth above, the public interest is not to act rashly – once the Defendants proceed, there is no way to undo the damage and no way to compensate for it. In the Third Circuit, where likelihood of success on the merits and irreparable harm are clear, issuing an injunction necessarily serves the public good. *See 2660 Woodley Rd.*, 1998 U.S. Dist. LEXIS 22825, at *23 ("This Circuit recognizes that 'as a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor [the party seeking the injunction]." (Alteration in original)). Here, it is in the public interest for

13

this Court to maintain the *status quo*, at least until a proper injunction hearing may be held and the Plaintiffs' claims may be properly considered and adjudicated. The stakes and the public interest are just too great to decide otherwise. For these reasons, the public interest is best served by a temporary restraining order enjoining the Defendants.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant the Plaintiffs' motion for a preliminary injunction pending a full hearing on its motion for a preliminary injunction.

Respectfully submitted,

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

July 30, 2018

*/s Jonathan Scott Goldman*
JONATHAN SCOTT GOLDMAN
J. BART DELONE
LAUREN E. SULCOVE
PA Atty. Nos. 93909, 42540, and 92969
Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391
jgoldman@attorneygeneral.gov

14