# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, GOVERNOR TOM WOLF, ATTORNEY GENERAL JOSH SHAPIRO, and PENNSYLVANIA STATE POLICE, <br><br> Plaintiffs, <br> v. <br><br> DEFENSE DISTRIBUTED, DEFCAD, GHOST GUNNER and CODY WILSON, <br><br> Defendants. | **CIVIL ACTION NO: 2:18-cv-03208-PD** <br><br> **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

The Commonwealth of Pennsylvania (the "Commonwealth"), Governor Tom Wolf, Attorney General Josh Shapiro and the Pennsylvania State Police (the "State Police") (together, the "Plaintiffs"), by and through the Attorney General, hereby file this Complaint against Defendants Defense Distributed, DEFCAD, Ghost Gunner, and Cody Wilson (together, the "Defendants") and, in support thereof, state the following:

**INTRODUCTION**

1.    The Plaintiffs bring this action with respect to the availability of 3D printed plastic guns for all Pennsylvania residents including children regardless of age, mental health status, or criminal record.

2.    The 3D printed plastic guns are made available to every person for a nominal fee, by becoming a "member" of Defense Distributed. These fees can be paid via different methods including, bitcoin a non-traceable form of payment. When you enroll in Defense Distributed, you

are not asked for proof of age, mental health status, criminal record, or a valid gun license or permit; you need only pick a username and password, and supply an email.

3. Members and others will be able to download and print an actual, working gun, immediately to their 3D printers. These gun are made from plastic that will not be detectable with the metal detectors used in school, courthouses, and other public venues.

4. On or before August 1, 2018, Defense Distributed will make these 3D printable plastic guns available to not just Pennsylvania residents but the entire United States.

5. 3D printing is the future of consumer product availability instead of waiting for a product you purchase from Amazon to be delivered via the mail, all you need to do is download the product specifications, hit the print button, and voila you have gun capable of firing. The Defendants will claim that they are merely distributing "computer code." They are not. Defendants are facilitating the means for every person to acquire an actual working gun, plastic and undetectable, to whomever downloads and hits the print button on their 3D-printer. This is far exceeds Amazon Prime shipping. The Defendants deliver your gun to you instantaneously through the internet. It can be "printed" on your 3D printer and immediately available for use. No I.D.; no background check; no waiting period.

6. Firearms are Second Amendment-protected, potentially-deadly weapons for which our society – and our Commonwealth – has created complex legal controls to help keep people safe. Among these controls are the federal Gun Control Act and our Pennsylvania criminal laws, including the Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq*. These long-settled legal statutes require protections such as age minimums for purchase, background checks, and valid firearms licenses and permits. Violating these Federal and State criminal statutes, or aiding and abetting others in doing so, constitute felonies and misdemeanors of various degrees under the

law. Defendants do both here.

7.    The Defendants – by intention and design – bypass these established legal requirements to safeguard our Pennsylvania residents and communities. The damage is imminent and irreversible: with the settlement of a federal action in Texas on Friday, July 27, the Defendants are free to – and promise to – distribute guns in Pennsylvania, and beyond, in negligent, reckless and knowing disregard of the Federal and state criminal laws that apply to gun sales and purchases in the Commonwealth of Pennsylvania. Once these guns are on the streets and in the classrooms of our Commonwealth, they can never be retrieved.  And, while the damage these guns will cause might be measured in general lawlessness and specific loss of life and limb, it cannot be compensated for by money damages.

For these reasons, and in accordance with the application for preliminary and permanent injunction filed herewith, the Plaintiffs respectfully ask this Court to issue an immediate order enjoining the Defendants from making any 3D printable firearms available over the internet or assisting anyone else in doing so until such time as a proper hearing may be conducted by this Court and any further order of this Court is issued.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction under 28 U.S.C. §§1331, and §2201 as it pertains to the Federal Gun Control Act. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367 because those claims are so related to the federal claims that they form part of the same case or controversy. The exercise of supplemental jurisdiction avoid unnecessary duplication and multiplicity of actions and is in the interests of judicial economy, convenience, and fairness.

9.    Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §§

3

1391(e)(1)(B) and (C). The Defendants have committed, will imminently commit, and/or are aiding and abetting others in violating Federal and State criminal laws and engaging in tortious acts in this district directed at the Plaintiffs who reside in this judicial district.[1] A substantial part of the events giving rise to these illegal and tortious acts occurred in this district.

## THE PARTIES

10.    Plaintiff, the Commonwealth of Pennsylvania, is a sovereign state of the United States of America.  Governor Tom Wolf is the chief executive officer of the Commonwealth of Pennsylvania.  Attorney General Josh Shapiro is the chief law officer of the Commonwealth. Plaintiff, the Pennsylvania State Police, is a statewide law-enforcement body, dedicated to serving the Commonwealth and her citizens, with jurisdiction in all political subdivisions in the Commonwealth.[2] Created in 1905, the State Police was the first uniformed police organization of its kind in the United States. Today, the State Police includes approximately 5,000 sworn members and an additional approximately 2,000 civilians who serve in a variety of roles.[3] The Core Purpose of the State Police is to "seek justice, preserve peace, and improve the quality of life for all."[4]

11.    The Commonwealth and her residents are bound by the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. § 6101 *et sec.*, a statutory regime put in place by the General Assembly and signed by the Governor (the "Firearms Act") for the purpose of "provid[ing] support to law enforcement in the area of crime prevention and control." *Id.*, Preamble to Act

---

[1] https://www.theguardian.com/us-news/2016/jun/06/cody-wilson-3d-guns-printing-firearms-lower-receivers

[2] https://www.psp.pa.gov/Pages/default.aspx

[3] https://www.psp.pa.gov/About%20Us/Pages/default.aspx

[4] https://www.psp.pa.gov/About%20Us/Documents/Strategic%20Plan.pdf at 5

4

1995, June 13, P.L. 1024, No. 17 (Spec. Sess. No. 1).

12.    By law, the State Police "shall have the responsibility to administer the provisions of" the Firearms Act, and are assigned certain specific duties thereunder. 18 Pa. C.S. § 6111.1.(a), (b).   Among these duties, the State Police must: (1) review criminal histories, delinquency histories, and mental health histories of potential firearms' purchasers or transferees; make all reasonable efforts to identify the legal owner of any firearm confiscated or recovered by law enforcement; (3) establish a telephone number for inquires by licensed firearms manufacturer, importers, and dealers; and (4) provide information regarding the firearms laws and firearms safety. 18 Pa. C.S. § 6111.1.

13.    In filing this action, the Attorney General, the Governor of Pennsylvania, and the Pennsylvania State Police seek to uphold the rule of law; protect the citizens and agencies of the Commonwealth from imminent harm caused by Defendants' dangerous and illegal conduct; and prevent further harm, including to many school-aged students across the Commonwealth who have ready access to 3D printers.

14.    On information and belief, all of the Defendants work in concert with one another, are owned and/controlled by Defendant Cody Wilson, share the same address and telephone number, and intermingle their websites and other assets.

15.    Defendant, Defense Distributed, purports to be a "non-profit, private defense firm" headquartered in Austin[5]. As of this filing, it advertises on its website that *imminently* – on "August 1[,] 2018" – "[t]he age of the ***downloadable gun*** formally begins."[6]

16.    On information and belief, for a nominal fee ($5 per month – or even less for longer

---

[5] https://defdist.org/about/

[6] https://defdist.org/ (emphasis added). See Ex. A.

membership terms), *anyone* can become a member of Defense Distributed. When you enroll, Defense Distributed does not ask, for example, for proof of a member's age or valid gun license or permit – one need only pick a username and password and supply an email address. The member's name and mailing address are requested, but not required, and presumably such information is not verified in any way.[7]

17.    Defense Distributed promises that, by joining, members "do more than 'protect' the Second Amendment. They fund its ***direct, material expansion***."[8]  With the Friday, July 27 settlement of a federal action in Texas,[9] nothing prevents Defendants from allowing its members to download an *actual*, *working gun*, printed immediately to their 3D printers in un-metal-detectable plastic. As Defendants, have promised, "[t]he age of the downloadable gun formally begins." [10]

18.    Defendant Defense Distributed also administers the online library for Defendant DEFCAD and manages Defendant Ghost Gunner.[11]

19.    On information and belief, Defense Distributed does business in Pennsylvania and with Pennsylvanians through websites including https://defdist.org/, https://defcad.com/, and https://ghostgunner.net/.

20.    Not only does Defense Distributed intend to provide guns to residents of the Commonwealth, but it also seeks to provide guns to people who live in Pennsylvania's neighboring

---

[7] https://membership.defdist.org/join/.

[8] https://membership.defdist.org/ (emphasis added).

[9] *Defense Distributed et al v. United States Department of State et al.*, Case 1:15-cv-00372.

[10] https://defdist.org/ (emphasis added). See Ex. A.

[11] https://defcad.com/faq/ (What is Defense Distributed?); https://ghostgunner.net/pages/faq ("What is Ghost Gunner?")

states and others who visit Pennsylvania and pass through it.

21.     Defendant DEFCAD is "administered by [Defendant] Defense Distributed."[12] DEFCAD allows users to upload and share computer assisted designs, blueprints and drawings for firearms "without restriction."[13] On its website, DEFCAD asks "supporters" to "support DEFCAD" by "becom[ing] members of [Defendant] *Defense Distributed*" (emphasis added) by making "[a]nonymous bitcoin donations" at an identified account number.[14] DEFCAD promises to keep users' personal information private and allows users to submit firearms computer designs without registering an account, so long they are "only" sent "via encrypted communications."[15]

22.     Defendant Ghost Gunner is "a manufacturing concern managed by Defense Distributed."[16] It has created and sells a "machine," the "Ghost Gunner 2," through its online website, "Ghost Gunner," which the consumer can obtain by making a $250 deposit, that mills the lower receiver of an AR-15 to completion from 80% manufacture, allowing Pennsylvanians and other individuals to create high quality, assault rifles and pistols – without serial numbers – at home without hand tools or expensive machinery.[17]

23.     Defendant Cody Wilson is a self-described "crypto-anarchist" and "insurrectionist" who, on information and belief, owns and/or has complete control over Defendants Defense Distributed, DEFCAD and Ghost Gunner.  Mr. Wilson has explained that he "represent[s] the

---

[12] https://defcad.com/about/.

[13] https://defcad.com/faq/ (What can I upload to DEFCAD?); https://defcad.com/about/.

[14] https://defcad.com/faq/ (How can I support DEFCAD?).

[15] https://defcad.com/faq/ (Is my personal information private? Can I submit content without registering an account?).

[16] https://ghostgunner.net/pages/faq ("What is Ghost Gunner?").

[17] https://ghostgunner.net/collections/featured-products/products/ghost-gunner-2-deposit.

7

destruction of commonsense gun control," and people "should be very afraid."[18] "My ideas are dangerous to them because they live in a managed world," he has stated. "I prefer to be a kind of horseman [19] coming down. It sends our enemies into despair and it brings joy to our allies."[20] When asked by a reporter in 2017 whether he agreed with *Wired* Magazine naming him "the 15th most dangerous person alive" in its December 12, 2012 issue,[21] he responded: "The words were not true then. But I would like them to be true one day."[22] That was 2012. At the time, Mr. Wilson was a "24-year-old University of Texas law student … working on a 3D printable gun, the digital files of which he then planned to distribute to anyone who wanted them."[23] According to Mr. Wilson, he initially released his "downloadable gun" on the internet, through Defendant Defense Distributed, on May 6, 2013; within two days[24] the United States State Department demanded that Defense Distributed take the product offline, and Mr. Wilson sued the State Department.[25] That litigation just settled. Now Mr. Wilson has asserted that he will make his downloadable gun available to the masses by broadly releasing technical information that is not yet available on the

---

[18] https://www.theguardian.com/us-news/2016/jun/06/cody-wilson-3d-guns-printing-firearms-lower-receivers

[19] The Four Horsemen of the Apocalypse are described in the last book of the New Testament, the Book of Revelation, at 6:1-8. It describes a book or scroll in God's right hand which, when opened, summons four beings that ride out on white, red, black, and pale horses. The four riders symbolize (1) conquest or pestilence (and less frequently, the Christ or the Antichrist); (2) war; (3) famine; and (4) death. The Christian apocalyptic vision is that the Four Horsemen are to set a divine apocalypse upon the world as harbingers of the Last Judgment. https://en.wikipedia.org/wiki/Four_Horsemen_of_the_Apocalypse.

[20] https://www.theguardian.com/us-news/2016/jun/06/cody-wilson-3d-guns-printing-firearms-lower-receivers

[21] https://www.wired.com/2012/12/most-dangerous-people/.

[22] https://www.ammoland.com/2017/03/cody-wilson-interview/#axzz5MPE81hrz

[23] https://freebeacon.com/culture/dangerous-gun-maker-world/.

[24] https://freebeacon.com/culture/dangerous-gun-maker-world/.

[25] https://freebeacon.com/culture/dangerous-gun-maker-world/.

8

internet and will enable the 3D printing of firearms.

## VIOLATION OF THE NATIONAL FIREARMS ACT

24.     The National Firearms Act prohibits manufacturers of firearms from shipping or transporting in interstate or foreign commerce any firearm to any person other than a licensed importer, licensed manufacturer, licensed dealer or licensed collector. 18 U.S.C. § 922(a)(2).

25.     The National Firearms Act also makes it unlawful for any person to transfer, sell, give, trade, transport or deliver any firearm to any person who the transferor knows, or has reasonable cause to believe, does not reside in the state in which the transferor resides. 18 U.S.C. § 922(a)(5).

26.     It is also unlawful for a licensed manufacturer to sell or deliver any firearm or ammunition to any individual with a license he knows, or has reasonable cause to believe, is less than 18 years of age or if the firearm or ammunition is other than shotgun or rifle, to any individual who the license he knows, or has reasonable cause to believe, is less than 21 years of age. 18 U.S.C. § 922(b)(1).  As stated, Defendants provides for no checks into background or legality of possession of any recipients of the firearms proposed to be distributed by their website as they are required to do by the National Firearms Act.

27.     Violations of statutes constitute negligence *per se* for the type of harm intended to be prevented by the statute. Here, the National Firearms Act was violated by the Defendants by circumventing the background check requirements and by passing the requirements for transfers of firearms only to licensed firearms dealers.

9

28.     The Protection of Lawful Commerce and Arms Act (PLCAA) specifically permits an action brought against a seller for negligent entrustment or negligence *per se*. 15 U.S.C. § 7901 *et seq*.

29.     The PLCAA also permits an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product.

30.     Such distribution would constitute negligence *per se* for failure to follow the applicable portions of the National Firearms Act, 18 U.S.C. § 922.

31.     The interpretation of the National Firearms Act for purposes of negligence *per se* constitute a federal question for purposes of jurisdiction.

32.     Failure to perform background checks of any sort, or to ascertain the age of persons downloading firearms from the Defendant's website, constitutes negligence *per se* and that the Defendants have utterly failed to ascertain the legality of the possession of the firearms by users of their website.

33.     Many schools have 3-D printing facilities that are accessible by children which may be used to create firearms using the Defendant's manufacturing download.

34.     Possession by children of firearms is a harm contemplated by the National Firearms Act, which is apparent from the age limitation specified therein.

35.     Defendant's failure to ascertain the age of users of its provided materials in a clearly stated scheme to circumvent the National Firearms Act with knowledge that this is a possibility and an indifference as to the consequences, is negligence.

36.     The Commonwealth, in seeking to enjoin Defendant's actions as negligence *per se* due to the clear violations of federal law

10

## CONSTITUTIONAL PRINCIPLES

37.    On information and belief, Defendant Defense Distributed insists that the computer code for its "downloadable guns" is speech protected by the First Amendment.

38.    It is well established, however, that the government may regulate speech that is "directed to inciting or producing imminent lawless action." *Brandenberg v. Ohio,* 395 U.S. §§ 444, 447  (1969) (per curiam).  The government may also regulate speech that facilitates or aids and abets criminal behavior.  *United States v. Bell,* 414 F3d 474, 484 (3rd Cir 2005).

39.    The computer code behind Defendants' downloadable guns is designed to enable individuals who cannot legally obtain guns to print them at home with only the click of a mouse.

40.    This facilitates obtaining a firearm outside of the law and encourages firearm use in lawless action.

41.    In making this code widely available on a mainstream website, the Defendants are inciting and facilitating lawless action.  As Mr. Wilson has stated: "Give all the background checks that you want. My company is built around evading that entire program."[26]

42.    When Mr. Wilson initially released his "downloadable gun" in 2013, 100,000 people downloaded it within two days.[27]  Each download is capable of printing an unlimited number of guns.

43.    Upon information and belief, the downloading of Defendants' 3D-printable guns can occur the instant the downloadable files are made public, resulting in countless unlicensed, un-

---

[26] Thor Benson, "TERRIFYING FUTURE: 3-D Printed Guns Could Outsmart Gun-Control Efforts," Aug. 15, 2016 (https://www.thedailybeast.com/3-d-printed-guns-could-outsmart-gun-control-efforts.)

[27] https://freebeacon.com/culture/dangerous-gun-maker-world/.

11

metal-detectable guns, being printed in the coming days.

44.     Once a download is complete, printing the gun takes only a matter of hours – within an afternoon, someone could download, print, and fire the Defendants' gun. The risk imminent.

45.     Once the guns are printed and released onto the streets of the Commonwealth, they cannot be retrieved, and the destruction they cause cannot be undone.

46.     The computer code behind the Defendants' downloadable gun is designed to incite imminent lawless action which is likely to occur.  The code facilitates such action.  Therefore, it is not entitled to First Amendment Protection.

## PUBLIC NUISANCE ISSUES

47.     Pursuant to 18 Pa. C.S. §6504, violations of the Pennsylvania Uniform Firearms Act of 1995 and the Federal Gun Control Act of 1968 committed and facilitated by the Defendants constitute a public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law.

### A.  The Defendants Violate the Federal Gun Control Act of 1968

48.     Like the Pennsylvania Uniform Firearms Act, the Federal Gun Control Act is designed to provide support to Federal, State, and Local Law Enforcement officials in their fight against crime and violence.  See 18 U.S.C. § 921 *et seq*. Congressional Findings and Declaration.

49.     The Federal Gun Control Act also has a specific provision under which it is unlawful for any person to manufacture, sell, ship, deliver, possess, transfer, or receive any firearm that cannot be detected by a walk-through metal detector or identified as a firearm by the types of x-ray machines used at airports.  See 18 U.S.C. § 922 (p).

50.     As detailed above the actions of the Defendants constitute violations of Federal Gun Control Act and the aiding and abetting of others to violate this Federal Statue.

12

**B.  The Defendants Violate the Pennsylvania Uniform Firearms Act of 1995**

51.      Section 6105 of the Firearms Act mandates that any person who has been convicted of certain enumerated offenses inside or outside of Pennsylvania "regardless of the length of sentence" or whose conduct meets certain specified criteria "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth."  18 Pa. C.S. § 6105(a).  The definition of "firearm" in section 6105 "shall include" any weapons which are "designed to or may readily be converted to" expel any projectile by the action of an explosive or the frame or receiver of any such weapon.  18 Pa. C.S. § 6105(i).  The "downloadable guns" that Defendant Defense Distributed promises to make available constitutes a "firearm" under this section of the Firearms Act because it is a weapon that is designed and, by 3D printing, "may readily be converted to" expel bullets by an explosive.  *Id.* Depending on the underlying offense or criteria, violation of section 6105, by individuals who shall not possess, use, control, sell, transfer or manufacture the Defendants' firearm in the Commonwealth is a second degree felony or first or third degree misdemeanor.  18 Pa. C.S. § 6105(a)(1).  Each firearm wrongly possessed by a felon constitutes a separate offense.  Depending on Mr. Wilson's own record of legal conduct in and out of Pennsylvania, he may personally be subject to criminal penalties under § 6105(a)(1).  Even if Mr. Wilson has a spotless criminal record, his actions and those of Defense Distributed constitute "aiding and abetting" others to violate § 6105 of the Firearms Act.  18 Pa. C.S. § 306.

52.      Section 6106 of the Firearms Act mandates, with limited exceptions, that, outside of one's home or "fixed place of business," firearms may not be carried in the Commonwealth "without a valid and lawfully issued license."  18 Pa. C.S. § 6106(a).  Violation of this section constitutes a third degree felony unless the unlawful carrier of the firearm is "eligible" to have a

13

valid license, in which case the violation is a first degree misdemeanor. *Id.* It is believed that the Defendants do not conduct any monitoring or are not sufficiently verifying whether Pennsylvanians who purchase downloadable guns from Defense Distributed have valid and lawfully issued firearms licenses or are eligible to do so. Therefore, the actions of the Defendants constitute "aiding and abetting" others to violate section 6106 of the Firearms Act. 18 Pa. C.S. § 306.

53.     Under section 6109 of the Firearms Act, a "license to carry a firearm" is required to carry a concealed firearm "on or about one's person or in a vehicle throughout this Commonwealth." 18 Pa. C.S. § 6109(a). In order to apply for a concealed carry license, you must be "21 years of age or older" and the application itself must be "uniform throughout this Commonwealth" and only "on a form prescribed by the Pennsylvania State Police." 18 Pa. C.S. § 6109(b),(c). In filling out the application, the licensee must identify one of the following reasons for applying for a firearm license: "self-defense, employment, hunting and fishing, target shooting, gun collecting or another proper reason." 18 Pa. C.S. § 6109(c).

54.     Applicants must also sign and date the following statement under penalty of perjury, certifying that they have "never been convicted of a crime that prohibits [them] from possessing or acquiring a firearm under Federal or State law," are "of sound mind," and "have never been committed to a mental institution." *Id.* Applicants must also authorize the relevant law enforcement officials to research all records necessary to verify the certification and promise to "promptly notify" them if they are issued a license but later "knowingly become ineligible to legally possess or acquire firearms." *Id.*

55.     Then, before a license is issued, the sheriff must "conduct [an] investigation" of the applicant including an investigation of the applicant's "record of criminal conviction," whether or

14

not the applicant "is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year," and has a "character and reputation" such that the applicant "will not be likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(d). The sheriff must also "conduct a criminal background, juvenile delinquency and mental health check." *Id.*

56. On information and belief, the Defendants are not monitoring any of this information, conducting any of these checks or collecting the necessary information to do so. And, even if they were, these duties must be performed by a Commonwealth Sheriff on the standardized form prescribed by the State Police. On information and belief, the Defendants are also not checking or verifying that people who download their guns have valid firearms licenses from Pennsylvania or any other state. Therefore, the actions of the Defendants constitute "aiding and abetting" others to violate section 6109 of the Firearms Act. 18 Pa. C.S. § 306.

57. The Firearms Act also contains provisions prohibiting possession or transport of a firearm by anyone under 18 years old anywhere in the Commonwealth, 18 Pa. C.S. § 6110.1, imposing other duties upon sellers, 18 Pa. C.S. § 6111, and requiring dealers of firearms in Pennsylvania to be licensed and do business only at their designated place of business or at a legal gun show or meet, 18 Pa. C.S. §§ 6112, 6113. On information and belief, the Defendants are not abiding by these provisions of the Firearms Act and are aiding and abetting others in violating them. 18 Pa. C.S. § 306.

C. **The Firearms Act Places Even Greater Restrictions on the City of Philadelphia**

58. The Firearms Act imposes even greater restrictions upon residents of the City of Philadelphia. Under section 6108 of the Firearms Act, no one may carry a firearm, rifle or shotgun in Philadelphia "at any time upon the public streets or upon any public property" unless he is

15

licensed to do so or is exempt from licensing.  18 Pa. C.S. § 6108.

59.     Indeed, the City of Philadelphia has a specific ordinance directly addressing the 3D printing of guns and gun parts.  In sum: *you cannot do it*.

60.     Chapter 10-2000 of the Philadelphia Code prohibits the use of a 3D printer to create (or "print") any firearm – or even any piece of a firearm – unless that person possess a license to manufacture firearms under 18 U.S.C. §923(a). PHILA., PA CODE §10-2002 (2013) ("No person shall use a three-dimensional printer to create any firearm, or any piece or part thereof, unless such person possesses a license to manufacture firearms under Federal law, 18 U.S.C. § 923(a).") See also, PHILA., PA CODE §10-2001 ("(1)  Firearm. Any device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosive or burning substance or any device readily convertible to that use. (2) Three-dimensional printer. A computer-driven machine capable of producing a three-dimensional object from a digital model.").

## CONSUMER PROTECTION ISSUES

61. The Defendants' conduct also violates Pennsylvania's *Unfair Trade Practices and Consumer Protection Law*, 73 P.S. § 201-1, et seq. (the "Consumer Protection Law").

62. The Consumer Protection Law authorizes the Attorney General to bring an action in the name of the Commonwealth to restrain by permanent injunction unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce declared unlawful therein.

63. On information and belief, the Defendants willfully use, have willfully used and/or are about to willfully use, the methods, acts, or practices set forth above.  As a result, the Commonwealth and her citizens are suffering and will continue to suffer harm unless and until the Defendants' actions are enjoined.  Therefore, the public interest is served by seeking the injunction

16

to restrain the Defendants' methods, acts and practices.

64. On information and belief, for a nominal fee ($5 per month – or even less for longer membership terms), anyone can become a member of Defense Distributed. Members can download an actual, working gun which they can print immediately to their 3D printers in un-metal-detectable plastic. This constitutes "trade" and "commerce" pursuant to Section 201-2(3) of the Consumer Protection Law because Defendants are advertising, offering for sale, selling or distributing services and property and is otherwise trade or commerce directly and indirectly affecting the people of this Commonwealth. 73 P.S. § 201-2.

65. The Defendants' conduct of allowing members to download an actual, working gun, printed immediately to their 3D printers in un-metal-detectable plastic violates the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. § 6101 *et seq*. It also constitutes aiding and abetting in violation of 18 Pa. C.S. § 306, a public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law, 18 Pa. C.S. § 6504, and corruption of minors in violation of 18 Pa. C.S. § 6301.

66. The Defendants' conduct of allowing members to download an actual, working gun, printed immediately to their 3D printers in un-metal-detectable plastic violates the Federal Gun Control Act of 1968, 18 U.S.C. § 921, *et seq*.

67. Defendant Defense Distributed also engages in trade and commerce within the Commonwealth of Pennsylvania by advertising, offering for sale, selling or distributing 3D printers for the purpose of "printing" or manufacturing firearms within the Commonwealth of Pennsylvania through its subsidiary Ghost Gunner and by advertising, offering for sale, selling and distributing downloads to be used in the manufacturing of firearms by Pennsylvania consumers through its subsidiary DEFCAD.

17

68. The Defendants advertise, offer for sale, sell or distribute firearm downloads and 3D printers in Pennsylvania for the express purpose of allowing anyone of any age, regardless of their background and regardless of whether they have valid firearms licenses or permits, to "print" or manufacture their own firearms.

69. In so doing, the Defendants misrepresent and deceptively imply to Pennsylvania consumers that they are authorized and permitted to sell such products in Pennsylvania.

70. There is potential that the 3D printed guns could be defective by being improperly printed or printed on the wrong grade of plastic this could lead to life threatening harm to consumers who a defectively printed gun.

71. Upon information and belief, upon attempting to obtain a firearm download and 3D printer online on Defendants' websites, a consumer within the Commonwealth of Pennsylvania will not be blocked from being able to do so or otherwise informed as to the legality of obtaining, manufacturing, possessing or carrying such firearms and products.

72. The methods, acts and practices of Defendants Ghost Gunner and DEFCAD constitute unfair methods of competition and unfair or deceptive acts and practices prohibited by Section 201-3 of the Consumer Protection Law, including, but not limited to, the following:

a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services (Section 201-2(4)(ii));

b. causing the likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another (Section 201-2(4)(iii));

c. representing that goods or services have a sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have (Section 201-2(4)(v)); and

18

d.   engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (Section 201-2(4)(xxi)).

73 P.S. § 201-2(4)(ii); (iii); (v); and (xxi).

73. At all relevant times, these unlawful methods, acts and practices have been willfully used by Defendants Defense Distributed, DEFCAD, Ghost Runner and Cody Wilson.

74. The Commonwealth believes that its citizens are suffering and will continue to suffer harm unless the acts and practices are permanently enjoined.

**THE DEFENDANTS IMMINENTLY
WILL POST MANY NEW "DOWNLOADABLE GUNS" ON THE INTERNET**

75.     The Defendants have confirmed through public announcements, media statements, and a federal litigation in Texas that they plan to imminently release technical information that is not yet available on the Internet and will enable the simple downloading and manufacturing and creation of firearms through 3D printing.

76.     The Defense Distributed website announces that August 1, 2018, the day Defendant DEFCAD's website is relaunched, is the day that "[t]he age of the downloadable gun formally begins."[28] A July 10, 2018 news article reports that the relaunched Defense Distributed website will include "a repository" of downloadable guns that the Defendants have been privately creating and collecting, including "exotic DIY [do-it-yourself] semiautomatic weapons."[29]  Mr. Wilson states that Defense Distributed has been creating a vast library of new files for downloadable guns: "We're doing the encyclopedic work of collecting this data and putting it into the commons[.] [ ]

---

[28] https://defdist.org/ (emphasis added). See Ex. A.

[29] Andy Greenberg, A Landmark Legal Shift Opens Pandora's Box for DIY Guns, Wired (July 10, 2018), available at https://www.wired.com/story/a-landmark-legal-shiftopens-pandoras-box-for-diy-guns/.

What's about to happen is a Cambrian explosion of the digital content related to firearms."[30] One report relates that "[t]hroughout the litigation" in Texas, which lasted years, Mr. Wilson "developed a trove of other 3-D printable weapon blueprints, including Assembly AR-15s and AR-10s."[31]  These yet-to-be-released downloadable, 3D-printable guns are markedly advanced from those briefly released in 2013 because, although those older files may still be available on the dark web, those files may be piecemeal and not always reliable.[32] What the Defendants are doing here is different: They are posting on a mainstream website full, 3D-printable files for complete guns. Indeed, in their second amended complaint in the Texas litigation, the Defendants admit that new files have been created that have yet to become publicly available: "Defense Distributed has and will continue to create and possess other files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet."[33] The Defendants' stated intention and promise is that these files can be printed directly to a 3D printer.  Or, as they say on their website: imminently ""[t]he age of the ***downloadable gun*** formally begins." [34]

## CAUSES OF ACTION

[30] *Id.*

[31] Deanna Paul, Meet the man who might have brought on the age of 'downloadable guns', Washington Post (July 18, 2018), available at https://www.washingtonpost.com/news/postnation/wp/2018/07/18/meet-the-man-who-wants-to-bring-on-the-age-of-downloadable-guns-andmay-have-already-succeeded/?utm_term=.3fc838e31666.

[32] Tess Owen, Get Ready for the New Era of 3D-Printed Guns Starting August 1, Vice News (July 18, 2018), available at https://news.vice.com/en_us/article/ev8xjn/get-ready-for-the-new-era-of-3d-printed-gunsstarting-august-1.

[33] *Defense Distributed et al v. United States Department of State et al.*, Case 1:15-cv-00372, Second Amended Complaint, ¶ 44, filed Mar. 16, 2018 (ECF No. 90).

[34] https://defdist.org/ (emphasis added). See Ex. A.

## COUNT I
### Request for Equitable Relief

### (Preliminary and Permanent Injunction)

77.     The Commonwealth incorporates by reference the foregoing paragraphs of the Complaint as if set forth at length.

78.     In Pennsylvania, the criminal nature of an act does not deprive equity of jurisdiction.

79.     Furthermore, if a criminal act sought to be enjoined constitutes a public nuisance then it may be restrained on the motion of the proper authorities.

80.     Here, Defendants' conduct constitutes a public nuisance.

81.     Plaintiffs are the proper authorities to bring a motion to bring such a motion for equitable relief, including seeking such relief in the form of a motion seeking a preliminary and permanent injunction.

WHEREFORE, the Plaintiffs ask this Court to grant equitable relief in the form of a preliminary and permanent injunction, and grant whatsoever additional and further relief as is just and equitable.

## COUNT II

### Violation of Criminal Laws and Aiding and Abetting Violation of the Same

### (Preliminary and Permanent Injunction)

82. The Commonwealth incorporates by reference the foregoing paragraphs of the Complaint as if set forth at length.

83. Based on the forgoing, the Defendants have committed, will imminently commit and/or are aiding and abetting others in violating Federal and State criminal laws

21

in the Commonwealth of Pennsylvania.

84. Among these criminal laws are the Federal Gun Control Act, 18 U.S.C. § *921 et seq.*; the Pennsylvania Uniform Firearms Act. 18 Pa. C.S. § 6101, *et seq.*; public nuisance 18 Pa. C.S. § 6504; corruption of minors, 18 Pa. C.S. § 6301, and aiding and abetting, 18 Pa. C.S. § 306.

85. Violations of statutes constitute negligence *per se* for the type of harm intended to be prevented by the statute. Here, the National Firearms Act was violated by the Defendants by circumventing the background check requirements and by passing the requirements for transfers of firearms only to licensed firearms dealers.

86. The Protection of Lawful Commerce and Arms Act (PLCAA) specifically permits an action brought against a seller for negligent entrustment or negligence per se.

WHEREFORE, the Plaintiffs ask this Court to declare that the Defendants have violated, will imminently violate and are aiding and abetting others in violating the aforementioned laws and grant equitable relief in the form of a preliminary and permanent injunction, and grant whatsoever additional and further relief as is just and equitable

## COUNT III

### Public Nuisance

### (Preliminary and Permanent Injunction)

87. The Commonwealth incorporates by reference the foregoing paragraphs of the Complaint as if set forth at length.

88. The downloading of Defendants' 3D-printable guns will begin the instant the

22

downloadable files are made public, resulting in countless unlicensed, un-metal-detectable guns, being printed imminently.

89. Once the guns are printed and released onto the streets of the Commonwealth, they cannot be retrieved, and the destruction they cause cannot be undone.

90. The Defendants actions violate multiple laws will aid and abet others in doing the same.

91. Among these laws is Chapter 10-2000 of the Philadelphia Code which prohibits the use of a 3D printer to create (or "print") any firearm – or even any piece of a firearm – unless that person possess a license to manufacture firearms under 18 U.S.C. §923(a). PHILA., PA CODE §10-2002 (2013).

92. Defendants' actions will cause lawlessness and damage in the Commonwealth.

93. Defendants' actions constitute a public nuisance under common law, Section 821B of the Restatement (Second) of Torts and criminal law.

WHEREFORE, the Plaintiffs ask this Court to find that the Defendants have engaged in committing public nuisance and grant equitable relief in the form of a preliminary and permanent injunction, and grant whatsoever additional and further relief as is just and equitable.

### COUNT IV
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

**(Preliminary and Permanent Injunction)**

94. The Commonwealth incorporates by reference the foregoing paragraphs of the Complaint as if set forth at length.

95. The Consumer Protection Law authorizes the Attorney General to bring an action in the name of the Commonwealth to restrain by permanent injunction unfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce declared unlawful therein.

96. The Defendants willfully use, have willfully used and/or are about to willfully use, the methods, acts, or practices set forth above.  As a result, the Commonwealth and her citizens are suffering and will continue to suffer harm unless and until the Defendants' actions are enjoined.

97. Accordingly, the Defendants have violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, the Plaintiffs ask this Court to find that the Defendants have violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law and grant equitable relief in the form of a preliminary and permanent injunction, and grant whatsoever additional and further relief as is just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs the Commonwealth of Pennsylvania, Governor Tom Wolf, Attorney General Josh Shapiro, and the Pennsylvania State Police request that this Court enter judgment in its favor and:

 a. issue a order enjoining the Defendants from making any 3D printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so until such time as a formal injunction hearing may be held;

 b. preliminarily and permanently enjoin the Defendants from making any 3D printable firearms available over the internet in Pennsylvania or assisting anyone else in doing so;

 c. Award Plaintiff reasonable costs, including attorneys' fees; and

 d. Grant all such additional and further relief as this Court deems appropriate,

24

just and proper.

                                        Respectfully submitted,

                                        JOSH SHAPIRO
                                        Attorney General
                                        Commonwealth of Pennsylvania


July 30, 2018                           */s Jonathan Scott Goldman*
                                        JONATHAN SCOTT GOLDMAN
                                        J. BART DELONE
                                        LAUREN E. SULCOVE
                                        PA Atty. Nos. 93909, 42540, and 92969
                                        Office of Attorney General
                                        Strawberry Square, 16th Floor
                                        Harrisburg, PA 17120
                                        (717) 787-3391
                                        jgoldman@attorneygeneral.gov

25

# EXHIBIT A

 ABOUT  CONSULTING  LOGIN  JOIN

# AUGUST 1
# 2018

Defense Distributed relaunches DEFCAD after reaching a settlement agreement with the US Department of State, concluding a multi-year federal lawsuit. The age of the downloadable gun formally begins.



Defense Distributed. All rights reserved.

# DEFENSE
# DISTRIBUTED

PRIVATE DEFENSE TECH DEVELOPMENT
IN THE PUBLIC INTEREST

f  𝕏  ⊙  ▶

Case 2:18-cv-03208-PD   Document 12-1   Filed 07/31/18   Page 28 of 28