IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, *et al.*,<br>     Plaintiffs,<br><br>v.<br><br>DEFENSE DISTRIBUTED, *et al.*,<br>     Defendants. | :<br>:<br>:<br>:<br>: Civ. No. 18-3208<br>:<br>:<br>:<br>: |

**O R D E R**

On July 29, 2018, the Commonwealth of Pennsylvania and others filed this action, seeking declaratory and injunctive relief against Defense Distributed, Ghost Gunner, and Cody Wilson. (Doc. No. 1.) The Commonwealth asked me, *inter alia*, to enjoin Defendants from making 3D printable firearms available over the internet in Pennsylvania pursuant to: (1) the National Firearms Act, (2) the Federal Gun Control Act of 1968, (3) the Pennsylvania Uniform Firearms Act of 1995, and (4) public nuisance and consumer protection laws. (Doc No. 16.) All Parties anticipated that Defendants would invoke defenses under the First and Second Amendments. (See Doc. Nos. 16, 32, 40.) On August 27, 2018, I stayed these proceedings, pending the outcome of parallel litigation in the Western District of Washington. (Doc. No. 25.) Defense Distributed now moves to lift the stay. I will deny its Motion.

**I.     Background**

Defendants intend to post on the internet plans for the fabrication of 3D

printable plastic firearms.  The plans could be accessed by anyone who joins their organization as a member and pays a nominal fee.  The Commonwealth alleges that Defendants will conduct almost no screening as to the age, identity, criminal background, mental health, or other attributes of their members.  (Doc. No. 16.)

Before July 27, 2018, 3D printable firearms were regulated by the United States Department of State, pursuant to the Arms Export Control Act and the International Traffic in Arms Act, which require, *inter alia*, a license for the distribution of certain firearms or components, including designs.  (See Doc. No. 41, Ex. B.)  Defendants (who apparently have no such license) were thus prohibited before July 27, 2018 from making firearm plans freely available on the internet.

In 2013, Defendants challenged these regulations—first before the Directorate of Defense Trade Controls, and then subsequently in an action in the Western District of Texas.  (Id.)   On July 27, 2018 the Department of State reached a settlement with Defense Distributed.  (Id.)  As part of the settlement, the Department, using notice and comment rulemaking, removed 3D printable gun files from the "United States Munitions List."  (Id.)  The Department thus eliminated Defendants' obligation to obtain a license before publishing 3D printable firearm files.  (Id.)  According to the Commonwealth, "with the settlement of [the] federal action in Texas…the Defendants are free to—and promise to—distribute guns in Pennsylvania…."  (Doc. No. 7.)

On July 29, 2018 the Commonwealth brought the instant action and sought a Temporary Restraining Order, although the grounds for invoking federal jurisdiction were less than clear. (Doc. No. 2.) The Commonwealth does not, in the matter before me, directly challenge the Department's decision to reclassify 3D printable firearms, or the settlement in the Texas litigation. (Doc. No. 16.) Separately, however, the Commonwealth joined an action in the Western District of Washington, in which it does directly challenge the Department's reclassification of 3D printable firearms and removal from the Munitions List. State of Washington, et al. v. United States Dep't of State, et al., No. 18-1115, Doc. No. 1 (W.D. Wash. Nov. 12, 2019). The plaintiffs in the Washington litigation (including the Commonwealth) argue that the reclassification was invalid under Administrative Procedures Act and also raised Tenth Amendment claims concerning the potential impact of the Department's reclassification on state gun control regimes. (Id.) In the interest of judicial economy I stayed this matter pending the outcome of the Washington litigation. (Doc. No. 25.)

On November 12, 2019, the Washington Court granted partial summary judgment in favor of the Plaintiffs. It ruled that the decision to remove 3D printable firearm files from the Munitions List violated the APA: (1) because it was arbitrary and capricious; and (2) because the Department of State failed to give Congress requisite notice. The Court rejected the Tenth Amendment claims. (See Doc. No.

32, Ex. B.)  Defendants' appeal is pending before the Ninth Circuit.

Defense Distributed now moves to reopen the matter before me, arguing that the Washington litigation has reached a final merits determination.  It suggests that failure to decide cases within my jurisdiction, "would be treason to the Constitution." (Doc. No. 41 (quoting Cohens v. Virginia, 19 U.S. 264, 404 (1821).)  I do not agree.

## II.     Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).  The Third Circuit thus directs that "as a general principle, duplicative litigation in the federal court system is to be avoided." Remington Rand Corp.-Delaware v. Bus. Sys. Inc., 830 F.2d 1274, 1275–76 (3d Cir. 1987) (citing Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976)).  Nevertheless, federal courts have a "virtually unflagging obligation….to exercise the jurisdiction given them." See Colorado River Water Conservation Dist., 424 U.S. at 817.

## III.    Discussion

Judicial economy and the avoidance of duplicative litigation favor continuing my stay pending the Ninth Circuit's decision.  Although the Washington litigation

is not identical to the instant suit, it includes many of the same legal issues. The First and Second Amendment defenses raised here, for example, are likely to be common to both cases. (See Doc. No. 32, Ex. B (discussing the constitutional claims Defendants raised).)

Moreover, the relief granted in the Washington litigation, if upheld, largely returns the Parties to the pre-July 27, 2018 status quo: Defendants would be unable to distribute their plans without a license. If the Washington Court decision is upheld, the instant case may well be mooted.

Finally, continuing my stay will not prejudice Defendants. Because I cannot alter the judgment of the Washington Court, there will likely be no change to the status quo until the Ninth Circuit acts.

I will thus deny Defense Distributed's Motion.

**AND NOW**, this 14th day of May, 2020, it is hereby **ORDERED** that Defendant's Motion to Lift the Stay (Doc. No. 32) is **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.